**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ALAN JAROZEWSKI, Derivatively on Behalf of Nominal Defendant A.O. SMITH CORPORATION, | |
| Plaintiff, | C.A. No. |
| v. | |
| AJITA G. RAJENDRA, KEVIN J. WHEELER, JOHN J. KITA, RONALD D. BROWN, GLOSTER B. CURRENT, JR., WILLIAM P. GREUBEL, PAUL W. JONES, DR. ILHAM KADRI, BRUCE M. SMITH, MARK D. SMITH, IDELLE K. WOLF, AND GENE C. WULF, | **JURY TRIAL DEMANDED** |
| Defendants, | |
| and | |
| A.O. SMITH CORPORATION, | |
| Nominal Defendant. | |

**SHAREHOLDER DERIVATIVE COMPLAINT**

Plaintiff Alan Jarozewski ("Plaintiff"), by and through his undersigned attorneys, brings this

derivative complaint for the benefit of nominal defendant, A. O. Smith Corporation ("A. O. Smith"

or the "Company"), against certain members of its Board of Directors (the "Board") and certain of

its executive officers seeking to remedy defendants' breaches of fiduciary duties, violations of

Sections 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"),

insider trading (i.e., *Brophy* claim), and unjust enrichment.  Plaintiff's allegations are based upon

his personal knowledge as to himself and his own acts, and upon information and belief, developed

from the investigation and analysis by Plaintiff's counsel, including a review of publicly available

information, including filings by A. O. Smith with the U.S. Securities and Exchange Commission

1

("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## I.      NATURE AND SUMMARY OF THE ACTION

1.      A. O. Smith manufactures and markets comprehensive lines of residential and commercial gas and electric water heaters, boilers, tanks, and water treatment products. It has two reporting segments: North America and Rest of World. Its Rest of World segment primarily comprises markets in China, Europe, and India. The Rest of World group predominantly consists of the Company's business in China, which accounted for about one-third of A.O. Smith's total profits in 2018 and almost the entirety of its Rest of World segment sales.

2.      From 2015 to 2018, A. O. Smith continued to report positive financial results, which it attributed to sales in China, and expected its performance to continue to improve. For example, in 2018, A.O. Smith announced "record" sales of $3.2 billion, which it said was "primarily" due to "higher sales of water treatment products in China," in addition to pricing actions in the United States. For the year, the Company's actual China sales were over $1 billion.

3.      However, first quarter 2019 financial results were lower than expected. On April 30, 2019, A. O. Smith reported that sales declined 5% and net earnings declined 7%, in part because sales in China declined "due to channel inventory build in the first quarter of 2018."

4.      On this news, the Company's share price fell $3.24, or nearly 6%, to close at $52.57 per share on April 30, 2019, on unusually high volume.

5.      Then, on May 16, 2019, J Capital Research USA LLC ("J Capital") published a report, alleging that the Company had overstated its financial results by engaging in improper accounting practices (the "J Capital Report"). Citing an extensive investigation, including interviews with distributors in China and review of Chinese filings,  the J Capital Report alleged that A. O. Smith relied on an undisclosed relationship with a single customer, Jiangsu Huiyuan

Supply Chain Management Co., Ltd. ("UTP"), to "mask the actual China revenue slowdown through distribut[o]r-financed channel stuffing," which is the practice of shipping more inventory to channel partners than they can reasonably sell during a given period. The report further stated that UTP accounted for approximately 75% of the Company's sales in China.

6.     On this news, the Company's share price fell $4.88, or over 10%, over three consecutive trading sessions to close at $43.26 per share on May 20, 2019, on unusually heavy trading volume.

7.     On May 17, 2019, A. O. Smith issued a response acknowledging that it had a material  undisclosed customer in China, but claiming without support that "[a]ll revenue associated with UTP and others was appropriately recognized." It failed to affirm whether expenses, such as those incurred in financing loans to customers to purchase A. O. Smith's products, were appropriately recognized and disclosed.

8.     On May 29, 2019, J Capital issued a second report, refuting A. O. Smith's response with additional information showing that the Company "has supported UTP with loans or guarantees" and that distributors had been pressured by forced contract orders.

9.     On this news, the Company's share price fell $1.86, or over 4%, to close at $41.19 per share on May 29, 2019, on unusually heavy trading volume.

10.     Finally, on June 3, 2019, A. O. Smith admitted that many of the allegations made by J Capital were well-founded. In particular, the Company disclosed that UTP "provides asset-backed financing to certain of the Company's distributors in China" and that "the Company has agreed to repurchase inventory if both requested by the bank and certain defined conditions are met, primarily related to the aging of the distributors' notes."

11.     These revelations precipitated the filing of a securities class action in the U.S. District Court for the Eastern District of Wisconsin against A. O. Smith and certain of defendants, *City of Birmingham Retirement And Relief System v. AO Smith Corporation, et al.,* Case 2:19-cv-1198-LA (the "Securities Class Action").

12.     Plaintiff did not make a litigation demand prior to filing this action because such demand would have been futile based upon the composition of the Board and the actions taken by the Board. The Board is currently composed of ten members, all of whom are named in this action. As alleged herein, at least six directors allowed misleading statements to be disseminated: the four directors on the Company's Audit Committee failed to ensure the effectiveness of A.O. Smith's internal controls and the integrity of its financial statements, and two additional directors made public statements concealing the material relationship with UTP. Thus, more than half the members would be interested in a demand to investigate their own wrongdoing.

## II.     JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: violations of Section 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

14.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District.

### III. PARTIES

**Plaintiff**

15.     Plaintiff Alan Jarozewski has continuously owned his A. O. Smith stock for more than ten years.

**Nominal Defendant**

16.     Nominal Defendant A. O. Smith is a Delaware corporation with its principal executive offices located at 11270 West Park Place, Milwaukee, Wisconsin 53224. The Company stock trades on the New York Stock Exchange ("NYSE") under the symbol "AOS."

**Defendants**

17.     Defendant Ajita G. Rajendra ("Rajendra") has served as Executive Chairman of the Company's Board since September 2018. He has served as a director since December 2011. Rajendra served as Chief Executive Officer ("CEO") from January 2013 to September 2018.

18.     Defendant Kevin J. Wheeler ("Wheeler") has served as the Company's CEO since September 2018, as a director since July 11, 2017, and as President since 2013. Wheeler served as Chief Operating Officer ("COO") of the Company from June 2017 to September 2018.

19.     Defendant John J. Kita ("Kita") served as the Company's Chief Financial Officer ("CFO") from May 2011 to May 1, 2019.

20.     Defendant Charles T. Lauber ("Lauber") has served as the Company's CFO since May 1, 2019.

21.     Defendant Ronald D. Brown ("Brown") has served as a director of the Company since 2001.

22.     Defendant Gloster B. Current, Jr. ("Current") served as a director of the Company from July 2007 to April 2018.

23.     Defendant William P. Greubel ("Greubel") has served as a director of the Company since 2006.

24.     Defendant Paul W. Jones ("Jones") has served as a director of the Company since 2004.  He served as the Company's CEO from 2006 to 2012.

25.     Defendant Dr. Ilham Kadri ("Kadri") has served as a director of the Company since December 2016.  She is a member of the Audit Committee.

26.     Defendant Bruce M. Smith ("Bruce Smith") has served as a director of the Company since 1995.

27.     Defendant Mark D. Smith ("Mark Smith") has served as a director of the Company since 2001.  He is a member of the Audit Committee.

28.     Defendant Idelle K. Wolf ("Wolf") has served as a director of the Company since 2005.  She is a member of the Audit Committee.

29.     Defendant Gene C. Wulf ("Wulf") has served as a director of the Company since 2003.  He is Chairman of the Audit Committee.

30.     The defendants named in ¶¶17-29 are sometimes referred to hereinafter as the "Individual Defendants."  The defendants named in ¶¶17-18, 21-29 are sometimes referred to hereinafter as the "Director Defendants."

## IV.     DUTIES OF THE INDIVIDUAL DEFENDANTS

31.     By reason of their positions as officers, directors, and/or fiduciaries of A. O. Smith and because of their ability to control the business and corporate affairs of A. O. Smith, at all relevant times, the Individual Defendants owed A. O. Smith and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage A. O. Smith in a fair, just, honest, and equitable manner.  The Individual Defendants were required to act in furtherance of the best interests of A. O. Smith and its

shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to A. O. Smith and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

32.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of A. O. Smith, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.  Because of their advisory, executive, managerial, and directorial positions with A. O. Smith, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

33.     To discharge their duties, the officers and directors of A. O. Smith were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the officers and directors of A. O. Smith were required to, among other things:

(a)     Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b)     Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

(c)     Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

(d)     When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

## V.      SUBSTANTIVE ALLEGATIONS

### A.      Relevant Background

34.      Item 101(c) of Regulation S-K, 17 C.F.R. § 229.101(c)(1)(vii) ("Item 101") requires companies to identify large customers.  Specifically, Item 101 requires companies to disclose, as to each business segment for which financial information is presented:

> **The dependence of the segment upon a single customer**, or a few customers, the loss of any one or more which would have a material adverse effect on the segment. **The name of any customer and its relationship, if any, with the registrant or its subsidiaries shall be disclosed if sales to the customer by one or more segments are made in an aggregate amount equal to 10 percent or more of the registrant's consolidated revenues and the loss of such customer would have a material adverse effect on the registrant** and its subsidiaries taken as a whole. . . . For purposes of this paragraph, a group of customers under common control or customers that are affiliates of each other shall be regarded as a single customer.

35.      The SEC has stated that "the identity of major customers is material information to investors.  This disclosure allows a reader to better assess risks associated with a particular customer, as well as material concentrations of revenues related to that customer."  64 Fed. Reg. 1728, 1731 (Jan. 12, 1999).

### B.      The Individual Defendants Caused A. O. Smith to Issue False And Misleading Statements

36.      On July 26, 2016, defendants Rajendra, Kita, Brown, Current, Greubel, Jones, Bruce Smith, Mark Smith, Wolf, and Wulf caused A. O. Smith to publish a press release announcing second quarter 2016 financial results.  Therein, the Company reported "record second quarter net earnings of $87.1 million or $.98 per share on record second quarter sales of $667.0 million."  According to the press release, these results were driven by success of the Company's operations in China:

> "**Our strong year-over-year earnings growth of 23 percent continued to demonstrate solid execution by our business teams in North America and China**," noted Ajita G. Rajendra, chairman and chief executive officer.

"*We achieved year-over-year sales growth, in China of 16 percent in local currency in the second* quarter thanks to increased sales of water heating and water treatment products," Rajendra added.

\*        \*        \*

**Rest of World segment**

Sales of this segment, which is primarily comprised of China, Europe and India, increased approximately eight percent in the second quarter of 2016 to $239.8 million from $221.3 million in the year-ago quarter. *Continued strong customer demand/or the company's premium water heating and water treatment products drove China sales nearly 16 percent higher in local currency and approximately 10 percent higher as measured in U.S. dollars.*

Operating earnings for this segment were $33.0 million compared with $30.9 million earned in the 2015 second quarter. The impact to profits from higher China sales was partially offset by higher selling costs to support expansion in tier 2 and tier 3 cities and the e-commerce platform in China, as well as larger losses in India. Segment operating earnings were negatively impacted by approximately $2 million due to China currency translation. As a result of these factors, second quarter 2016 operating margin of 13.8 percent was modestly lower than the 14.0 percent operating margin in 2015.

(emphasis added).

37.     On August 8, 2016, defendants Rajendra, Kita, Brown, Current, Greubel, Jones, Bruce Smith, Mark Smith, Wolf, and Wulf caused A. O. Smith to file its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2016, affirming the previously reported financial results.  The report was signed by the Company's Vice President and Controller, Daniel Kempken ("Kempken") and Kita. Moreover, defendants Rajendra and Kita signed certifications pursuant to Sarbanes-Oxley Act of 2002 ("SOX") attesting to the accuracy of the financial results, the disclosure of all fraud, and the effectiveness of the Company's internal control over financial reporting.  The report also stated that the Company's sales in China would continue to grow in 2016, stating in relevant part:

Sales in our Rest of World segment grew approximately eight percent in the second quarter of 2016, as a result of ten percent sales growth in China. Sales in our Rest of World segment grew approximately ten percent in first half of 2016. China sales

in local currency grew approximately 16 percent in both the second quarter and first half of 2016 compared to the same periods last year. We expect full year 2016 sales in China to grow at a rate of approximately 15 percent in local currency driven by expected continued overall water heater market growth, market share gains, improved product mix and water treatment product growth at a rate significantly higher than 15 percent.

38.     On October 26, 2016, defendants Rajendra, Kita, Brown, Current, Greubel, Jones, Bruce Smith, Mark Smith, Wolf, and Wulf caused A. O. Smith to publish a press release announcing third quarter 2016 financial results. Therein, the Company reported "strong net earnings growth on nine percent increase in sales." Specifically, A. O. Smith recorded net earnings of $83.2 million on sales of $683.9 million due to, among other things, strong demand in China. The press release stated, in relevant part:

> Increased volumes of residential and commercial water heaters in the U.S. and continued strong demand for the company's water heating and water treatment products in China drove sales in the third quarter nine percent higher compared with sales of $625.1 million during the same period in 2015" and that "[s]ales increased 11 percent when adjusted for the impact from the stronger U.S. dollar against the Chinese and Canadian currencies…A. O. Smith delivered record sales and strong earnings increases thanks to our global growth strategy," commented Ajita Rajendra, chairman and chief executive officer.

> **Rest of World segment**

> Sales of this segment increased 11 percent in 2016 to $965.6 million compared with 2015 sales of $866.1 million. ***China sales increased 13 percent and grew 19 percent when the impact from the stronger U.S. dollar is excluded. An increase in demand for water heaters and residential air purification products and 35 percent growth in A. O. Smith-branded water treatment product sales contributed to the strong growth in China.***

> ***Operating earnings for this segment increased 14 percent in 2016 to $129.1 million compared with $113.0 million earned the prior year.*** Higher sales were partially offset by increased China selling, general and administrative (SG&A) expenses. Higher selling costs in China to support expansion in tier 2 and 3 cities, as well as higher advertising costs to support brand building, were the primary drivers of higher segment SG&A expenses. Currency translation reduced China earnings by approximately $8 million. Segment operating margin was slightly higher at 13.4 percent in 2016 compared with 2015 segment operating margin of 13.0 percent.

*Segment sales for the fourth quarter 2016 of $268.1 million were 16 percent higher than the same period in the previous year. Sales in China increased 24 percent in the quarter, excluding the impact from the strengthening U.S. dollar. Continued demand for the company's consumer products in the region led by water treatment and air purification products contributed to the strong sales growth.*

*Segment operating earnings of $38.2 million were 34 percent higher in the fourth quarter of 2016 than in the same three-month period in 2015, driven by the impact from higher China sales.* Higher selling costs to support growth, higher advertising costs to support brand building and $2.5 million due to currency translation, all in China, partially offset higher China sales. Segment operating margin for the period at 14.2 percent was higher than the fourth quarter of 2015 at 12.3 percent due to higher gross margins primarily driven by a more profitable mix of China products and improved profitability associated with sales of water treatment products in the 2016 quarter.

(emphasis added).

39.    On November 8, 2016, defendants Rajendra, Kita, Brown, Current, Greubel, Jones, Bruce Smith, Mark Smith, Wolf, and Wulf caused A. O. Smith to file its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2016, affirming the previously reported financial results.  The report was signed by Kempken and Kita. Moreover, defendants Rajendra and Kita signed certifications pursuant to SOX, attesting to the accuracy of the financial results, the disclosure of all fraud, and the effectiveness of the Company's internal control over financial reporting.  The report reiterated that A. O. Smith was experiencing strong sales in China, stating in pertinent part:

Sales in our Rest of World segment grew approximately 11 percent in the third quarter of 2016, as a result of 11 percent sales growth in China[.] *China sales* in local currency grew approximately 17 percent in the third quarter compared to the same period last year. We expect full year 2016 sales in China to grow at a rate in excess of 16 percent in local currency driven by expected continued overall water heater market growth, market share gains, improved product mix and growth in sales of water treatment products at a rate significantly higher than 16 percent.

40.    On February 2, 2017, defendants Rajendra, Kita, Brown, Current, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wolf, and Wulf caused A. O. Smith to publish a press release

announcing its fiscal 2016 financial results.  Therein, the Company reported "record sales of $2.69 billion and record net earnings of $326.5 million, or $1.85 per share, for 2016 compared with net earnings of $282.9 million, or $1.58 per share, the previous year."  Again, the Company touted its success in China as the primary driver of the results, stating that "[s]ales in China grew 13 percent during 2016 and grew 19 percent when the impact from the stronger U.S. dollar is excluded."  The press release continued in pertinent part:

> "**A. O. Smith had another excellent year, setting sales and earnings records thanks to continued healthy end markets for our consumer products in China and for boilers and commercial water heaters in the U.S.**," Ajita G. Rajendra, chairman and chief executive officer, observed.

> "In addition to the launch of several new products in China, **we saw an increase in China water treatment sales of nearly 35 percent**," Rajendra continued.

> **Rest of World segment**

> * * *

> Sales of this segment increased 11 percent in 2016 to $965.6 million compared with 2015 sales of $866.1 million. **China sales increased 13 percent and grew 19 percent when the impact from t/1e stronger U.S. dollar is excluded. An increase in demand/or water heaters and residential air purification products and 35 percent growth in A. 0. Smith-branded water treatment product sales contributed to the strong growth in China.**

> **Operating earnings for this segment increased 14 percent in 2016 to $129.1 million compared with $113.0 million earned the prior year. Higher sales were partially offset by increased China selling, general and administrative (SG&A) expenses.** Higher selling costs in China to support expansion in tier 2 and 3 cities, as well as higher advertising costs to support brand building, were the primary drivers of higher segment SG&A expenses. Currency translation reduced China earnings by approximately $8 million. Segment operating margin was slightly higher at 13.4 percent in 2016 compared with 2015 segment operating margin of 13.0 percent.

> **Segment sales for the fourth quarter 2016 of $268.1 million were 16 percent higher than the same period in the previous year. Sales in China increased 24 percent in the quarter, excluding the impact from the strengthening U.S. dollar. Continued demand for the company's consumer products in the region led by water treatment and air purification products contributed to the strong sales growth.**

> *Segment operating earnings of $38.2 million were 34 percent higher in the fourth quarter of 2016 than in the same three-month period in 2015, driven by the impact from higher China sales.* Higher selling costs to support growth, higher advertising costs to support brand building and $2.5 million due to currency translation, all in China, partially offset higher China sales. Segment operating margin for the period at 14.2 percent was higher than the fourth quarter of 2015 at 12.3 percent due to higher gross margins primarily driven by a more profitable mix of China products and improved profitability associated with sales of water treatment products in the 2016 quarter.

(emphasis added)

41.     On February 17, 2017, defendants Rajendra, Kita, Brown, Current, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wolf, and Wulf caused A. O. Smith to file its annual report on Form 10-K with the SEC For the period ended December 31, 2016 (the "2016 10-K"), affirming the previously reported financial results.  The report was signed by defendants Rajendra, Kita, Brown, Current, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wolf, and Wulf. Defendants Rajendra and Kita signed certifications pursuant to SOX, attesting to the accuracy of the financial results, the disclosure of all fraud, and the effectiveness of the Company's internal control over financial reporting.   Moreover, the report highlighted A. O. Smith's experience and market dominance in China, claiming the Company had grown to become "one of the leading suppliers of water heaters to the residential market in China."  It continued in pertinent part:

**REST OF WORLD**

Sales in our Rest of World segment increased 11.5 percent, or $99.5 million, in 2016 compared with the prior year. *A 12.5 percent increase in sales in China to $887.9 million was the primary source of the increase. Excluding the appreciation of the U.S. dollar in 2016, sales in China increased 18.9 percent in 2016.*

*We have operated in China for more than 20 years. In that time, we have been aggressively expanding our presence while building A. O. Smith brand recognition in the residential and commercial markets.* The Chinese water heater market is predominantly comprised of electric wall-hung, gas tankless and solar water heaters. *We believe we are one of the leading suppliers of water heaters to the residential market in China,* with a broad product offering including electric, gas, gas tankless, heat pump and solar units as well as combi boilers. Primarily for

Asia, we also manufacture and market water treatment products and air purification products.

We sell water heaters in more than 9,000 retail outlets in China, of which over 2,500 exclusively sell our products. Our water treatment products and air purification products are sold in over 6,500 and 2,500 retail outlets in China, respectively.  Our e-commerce  sales continue to grow in China reaching nearly $200 million in 2016.

(emphasis added).

42.     The 2016 10-K also said the main driver of A. O. Smith's favorable 2016 financial

and operating results was the Company's success in China:

**RESULTS OF OPERATIONS**

Our sales in 2016 were a record $2,685.9 million surpassing 2015 sales of $2,536.5 million by 5.9 percent. Excluding the impact from the appreciation of the U.S. dollar against the Chinese currency that occurred in 2016, our sales grew approximately eight percent in 2016. *The increase in sales in 2016 was **primarily due to higher sales in China of water heaters, residential air purification products,** as well as 35 percent sales growth of A. 0. Smith- branded water treatment products. **Sales in China grew 12.5 percent in 2016, and excluding the impact of the appreciation of the U.S. dollar, sales in China increased 18.9 percent in 2016.***

(emphasis added).

43.     The 2016 10-K also stated that the Company was positioned to continue to grow its

China business throughout 2017:

**Outlook**

***We expect our sales in China will continue to grow at a rate of approximately 15 percent in local currency terms in 1017 led by continued strong sales growth, of water heaters, water treatment and air purification products.*** We project continued declines in the Chinese currency compared to the U.S. dollar resulting in a five percent, or $40 million, headwind in 2017 sales, compared with the average rate in 2016....

Combining all these factors, we expect sales growth of between eight and 9.5 percent in 2017 and sales growth of between 9.5 and 11 percent measured in local currency in 2017 and earnings to be in the range of $1.98 to $2.08 per share for 2017. This does not include the potential impact of future acquisitions.

(emphasis added).

44. The 2016 10-K provided information about A. O. Smith's largest customers in North America, but failed to state comparable information for its Rest of World segment. The report stated:

> Net sales to our five largest customers represented approximately 37 percent of our sales in 2016. We expect that our customer concentration will continue for the foreseeable future. Our concentration of sales to a relatively small number of customers makes our relationship with each of these customers important to our business. . . .

> * * *

> In 2016, sales to the North America segment's two largest customers were $311.5 million and $280.8 million which represented 12 percent and 11 percent of the Company's net sales, respectively. In 2015, sales to the North America segment's two largest customers were $301.7 million and $287.0 million which represented 12 percent and 11 percent of the Company's net sales, respectively. In 2014, sales to the North America segment's two largest customers were $296.5 million and $237.2 million which represented 13 percent and ten percent of the Company's net sales, respectively.

45. The above statements in ¶¶ 36-44 were materially misleading because they failed to disclose: (a) that A. O. Smith relied on a single distributor, UTP, for up to 75% of its sales in China; (b) that the Company engaged in a channel stuffing scheme whereby A. O. Smith caused distributors (through UTP) to accept more product than they could reasonable sell; (c) that, in furtherance of this scheme, A. O. Smith provided asset-backed financing to the distributors and agreed to repurchase inventory if requested to do so; and (d) that, as a result, the Company's financial statements misrepresented key metrics including sales and revenue.

46. On March 3, 2017, defendants Rajendra, Brown, Current, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wolf, and Wulf issued a definitive proxy statement soliciting stockholder votes in advance of the Company's annual meeting to be held on April 13, 2017. In the 2017 proxy statement, these ten Individual Defendants solicited stockholder votes in favor of five management proposals, including: (i) a proposal to elect Rajendra, Brown, Current, Greubel,

Jones, Kadri, Bruce Smith, Mark Smith, Wolf, and Wulf to new terms as directors; and (ii) a proposal to approve compensation for A. O. Smith's named executive officers.

47.     The proxy statement disclosed that the Board determined that defendant Rajendra was not independent.   According to the proxy statement, the Board maintained an Audit Committee, which included Current, Mark Smith, Wolf and Wulf, which was tasked with oversight of, among other things, the Company's financial statements:

> **Audit Committee.** The Audit Committee consists of four members who meet the independence and financial literacy requirements of the NYSE and the SEC. The Audit Committee's duties include appointing the firm that will act as our independent registered public accounting firm. The Audit Committee's duties and responsibilities are set forth in its Charter, which has been approved by the Board of Directors and is available on our website. The Board of Directors has determined that Ms. Wolf and Mr. Wulf qualify as "audit committee financial experts" as defined by the SEC. The Audit Committee met eleven times during 2016, with seven of those meetings being telephonic. The Report of the Audit Committee is included as part of this Proxy Statement.

48.     The Audit Committee charter, incorporated by reference to the proxy statement, provides that the Audit Committee will, among other things:

> 4. Obtain and review an annual report by the independent auditors describing: the firm's internal quality-control procedures; any material issues raised by the most recent internal quality-control review, or peer review, of the firm or by any inquiry or investigation by governmental or professional authorities, within the preceding five years, and any steps taken to deal with any such issues; and all relationships between the independent auditors and the Company.

> 5. Review and discuss the annual audited financial statements and quarterly financial statements with management and the independent auditors, including the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations", and make a recommendation to the Board of Directors as to the inclusion of the annual audited financial statements in the Annual Report on Form 10-K and the quarterly unaudited financial statements and Forms 10-Q.

> 6. Review and discuss with management of the Company and the independent auditors the quarterly earnings press release and hold general discussion on financial information and earnings guidance provided to analysts and rating agencies as well as any matters required to be communicated to the Committee by the independent auditors.

7. Meet periodically with management to review and discuss the Company's policies and procedures regarding risk assessment and risk management. While it is the responsibility of management to assess and manage the Company's exposure to risk, the Committee, in conjunction with the other committees of the Board, will discuss and review the policies and procedures that govern the process and the steps management has taken to assess, monitor and control such exposures.

8. Meet periodically to review and discuss with management and the independent auditors the Company's accounting policies, that may be viewed as critical, and review and discuss any significant changes. The Committee will also review and discuss with management and the independent auditors significant accounting and reporting developments, including recent professional and regulatory pronouncements, and their impact on the Company's financial statements.

9. Discuss with management the results of Disclosure Committee meetings and management's activities in connection with performing its required quarterly certifications under Section 302 of the Sarbanes-Oxley Act, including the evaluation of the effectiveness of disclosure controls by the Chief Executive Officer and Chief Financial Officer.

49.     Regarding non-employee director compensation, the proxy statement told stockholders that Current, Greubel, Jones, Bruce Smith, Mark Smith, Wolf, and Wulf received between $212,213 and $235,213 in compensation from A. O. Smith in 2016 for his service on the Board; Brown received $244,213 and Kadri received $46,715.

50.     The proxy statement was materially misleading because it failed to disclose: (a) that A. O. Smith relied on a single distributor, UTP, for up to 75% of its sales in China; (b) that the Company engaged in a channel stuffing scheme whereby A. O. Smith caused distributors (through UTP) to accept more product than they could reasonable sell; (c) that, in furtherance of this scheme, A. O. Smith provided asset-backed financing to the distributors and agreed to repurchase inventory if requested to do so; and (d) that, as a result, the Company's financial statements misrepresented key metrics including sales and revenue.

51.     On April 17, 2017, the Company filed with the SEC a Form 8-K disclosing the results from the votes on the proposals contained in the 2017 proxy statement.  In particular: (i) Rajendra, Brown, Current, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wolf, and Wulf were

reelected to terms as directors; and (ii) the compensation to named executive officers was approved.

52.     On April 27, 2017, defendants Rajendra, Kita, Brown, Current, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wolf, and Wulf caused A. O. Smith to publish a press release announcing its first quarter 2017 financial results.  Therein, the Company reported "record first quarter net earnings of $87.7 million or $.50 per share on record first quarter sales of $740.0 million."  The press release continued in pertinent part:

> Sales in the quarter ended March 31 grew approximately 16 percent compared with sales of $636.9 million during the same period in 2016. **Sales in China grew 20 percent during the first quarter 2017 or grew 27 percent when excluding the impact from the stronger U.S. dollar.**
>
> "The strength of both the U.S. water heater industry and **our consumer product demand in China** *is encouraging,"* noted Chairman and Chief Executive Officer Ajita G. Rajendra. **"With double digit sales growth in both, operating segments in** *the* **quarter, A. 0. Smith** *is starting the year on solid footing."*
>
> * * *
>
> **Rest of World Segment**
>
> Sales of this segment, which is primarily comprised of China, Europe and India, increased approximately 19 percent in the first quarter of 2017 to $259.5 million from $217.4 million in the year ago quarter. **Continued strong customer demand/or the company's premium products and a pre-buy in advance of a price increase related to steel and other cost inflation, drove China sales** *27 percent higher as measured in local currency and over 20 percent higher as measured in U.S. dollars.  Water treatment sales in China grew over 50 percent and air purification sales grew over 80 percent in local currency.*

(Emphasis added.)

53.     On May 8, 2017, defendants Rajendra, Kita, Brown, Current, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wolf, and Wulf caused A. O. Smith to file its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2017, affirming the previously reported financial results.  The report was signed by Kempken and defendant Kita, and defendants

Rajendra and Kita signed certifications pursuant to SOX, attesting to the accuracy of the financial results, the disclosure of all fraud, and the effectiveness of the Company's internal control over financial reporting.  The report highlighted A. O. Smith's product sales in China:

> Sales in our Rest of World segment grew approximately 19 percent in the first quarter of 2017 ***as a result of 20 percent sales growth in China. China sales in local currency terms grew approximately 27 percent in the first quarter compared to tl1e same period last year driven by higher demand/or our consumer products and by a pre-buy by our customers in advance of a price increase related to steel and other costs.***
>
> ***We expect full year 2017 sales in China to grow at a rate of over 15 percent in local currency terms driven by expected continued overall water heater market growth, market share gains, improved product mix and water treatment product sales growth at a rate significantly higher than 15 percent.***

(emphasis added).

54.      On July 26, 2017, defendants Rajendra, Brown, Current, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf caused A. O. Smith to publish a press release announcing its second quarter 2017 financial results.  Therein, the Company reported "record second quarter net earnings of $92.4 million or $0.53 per share on second quarter sales of $738.2 million."  Moreover, the Company attributed the results to strong demand in China, stating in relevant part:

> "***We continued to see solid demand/or our premium products in China with sales growth, in local currency of 20 percent, led by water treatment and air purification***," commented Ajita G. Rajendra, chairman and chief executive officer. "Sales of our commercial water heaters and boilers in North America continued to be strong."
>
> * * *
>
> **Rest of World segment**
>
> Sales of this segment, which is primarily comprised of China, Europe and India, increased approximately 14 percent in the second quarter of 2017 to $272.8 million from $239.8 million in the year-ago quarter. ***Continued strong customer demand for the company's premium products, as well as a price increase announced in the first quarter of 2017, drove China sales 20 percent higher in local currency.***

> ***A. 0. Smith, branded water treatment sales grew 40 percent in local currency in the second quarter of 2017, and air purification product sales quadrupled.***

(emphasis added).

55.     On August 8, 2017, defendants Rajendra, Kita, Brown, Current, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf caused A. O. Smith to file its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2017, affirming the previously reported financial results.  The report was signed by Kempken and defendant Kita, and defendants Rajendra and Kita signed certifications pursuant to SOX, attesting to the accuracy of the financial results, the disclosure of all fraud, and the effectiveness of the Company's internal control over financial reporting.  The report also highlighted the Company's sales in China, stating in relevant part:

> Sales in our Rest of World segment grew approximately 14 percent in the second quarter of 2017 compared to the same period last year as a result of 15 percent sales growth in China. ***China sales in local currency terms grew approximately 20 percent in the second quarter driven by higher demand for our consumer products, led by water treatment and air purification, and pricing actions due to higher steel and other costs.***
>
> ***We expect full year 2017 sales in China to grow compared to 2016 at a rate of almost 17 percent in local currency terms driven by expected continued overall water heater market growth, market share gains, higher average selling prices and water treatment product sales growth at a rate significantly higher than 15 percent.***

(emphasis added).

56.     On October 25, 2017, defendants Rajendra, Kita, Brown, Current, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf caused A. O. Smith to publish a press release announcing its third quarter 2017 financial results.  Therein, the Company reported "record third quarter net earnings of $93.7 million or $0.54 per share" and stated that sales "increased nearly 10 percent to $749.9 million."  In the press release, defendant Rajendra attributed the results,

in part, to strong sales of its consumer products in China.  The press release continued in pertinent part:

> **Rest of World segment**
>
> Sales of this segment, which is primarily comprised of China, Europe and India, increased approximately 12 percent in the third quarter of 2017 to $270.1 million compared with the year-ago quarter. ***Higher demand for the company's premium consumer products, as well as pricing actions due to higher steel and other costs, drove China sales up nearly 13 percent.***

(emphasis added).

57.     On November 6, 2017, defendants Rajendra, Kita, Brown, Current, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf caused A. O. Smith to file its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2017, affirming the previously reported financial results.  The report was signed by Kempken and defendant Kita, and defendants Rajendra and Kita signed certifications pursuant to SOX, attesting to the accuracy of the financial results, the disclosure of all fraud, and the effectiveness of the Company's internal control over financial reporting.  The report also stated that the Company expected sales in China to continue to grow, stating in relevant part:

> In our Rest of World segment, we expect full year 2017 sales in China to grow compared to 2016 at a rate of over 15 percent in local currency terms driven by expected continued overall water heater market growth, market share gains, improved product mix and water treatment product sales growth at a rate significantly higher than 15 percent.
>
> **Rest of World**
>
> Sales in our Rest of World segment were $270.1 million in the third quarter of 2017 or $29.8 million higher than sales of $240.3 million in the third quarter of 2016. Sales in the first nine months of 2017 were $802.4 million or $104.8 million higher than sales of $697.6 million in the first nine months of 2016. ***China sales grew approximately 13 percent and 20 percent in local currency terms in the third quarter and first nine months of 2017, respectively, compared to same periods in the prior year, primarily due to higher sales of consumer products, particularly water treatment and air purification products.*** Sales in China in both periods of 2017 also benefitted from pricing actions announced earlier this year due to higher

steel and other costs. ***China sales of A. O. Smith branded water treatment products grew 31 percent and China sales of air purification products doubled in the first nine months of 2017, compared to the same period last year.***

Rest of World segment earnings were $33.8 million in the third quarter of 2017 or approximately nine percent higher than segment earnings of $31.1 million in the third quarter of 2016.  Segment earnings in the first nine months of 2017 of $98.8 million were approximately nine percent higher than segment earnings of $90.9 million in the first nine months of 2016.

(emphasis added).

58.      On January 30, 2018, defendants Rajendra, Kita, Brown, Current, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf caused A. O. Smith to publish a press release announcing its fiscal 2017 financial results.  Therein, the Company reported "record sales of $3 billion in 2017."  The press release stated that "[s]ales in China grew 16 percent during 2017 and grew 18 percent when the impact from the stronger U.S. dollar is excluded," which helped the Company achieve adjusted net earnings of $378.3 million.  The press release continued in pertinent part:

"2017 marked another record year for A. 0. Smith," Ajita G. Rajendra, chairman and chief executive officer, announced. "***Our double-digit sales growth, in 2017 was driven by continued strong demand for our consumer products in China and positive end markets for our water heaters and boilers in North, America. China sales exceeded the $1 billion milestone and were driven by 35 percent growth, in water treatment sales and a near doubling of air purification sales. China on-line sales reached $250 million in 2017***."

\*          \*          \*

**Rest of World segment**

Sales of this segment increased 16 percent in 2017 to $1.12 billion compared with 2016 sales of $965.6 million. ***China sales increased 16 percent and grew 18 percent when the impact from the stronger U.S. dollar is excluded.*** An increase in demand for the company's consumer products in the region, led by water treatment and air purification products, and pricing actions primarily  due to higher steel costs and higher fees paid to installers contributed to the strong sales growth in China. Water heater and water treatment sales in India increased approximately $8 million or over 40 percent in 2017 compared with 2016.

*Earnings for this segment increased 16 percent in 2017 to $149.3 million compared with $129.1 million earned the prior year.* Higher sales in China, including the price increase, were partially offset by higher steel costs, higher fees paid to installers and increased SG&A costs. Expansion of water treatment and air purification product retail outlets in tier 2 and 3 cities, higher advertising related to brand building in the company's newer product categories and higher water treatment product development engineering costs were the primary drivers of higher SG&A in China. Segment margin of 13.4 percent in 2017 was essentially the same as the prior year.

Segment sales for the fourth quarter 2017 of $313.8 million were I 7 percent higher than the same period in the previous year. *Sales in China increased 16 percent in the quarter,* driven by pricing actions primarily due to higher steel costs, higher fees paid to installers and higher demand for the company's consumer products in the region. Sales in India grew over 40 percent compared with the same period in 2016.

*Segment earnings of $50.8 million were 33 percent higher in the fourth quarter of 2017 compared with the same three-month period in 2016, driven by the impact from higher India sales and China sales, including the price increase. Higher steel costs and higher fees paid to installers partially offset the impact of higher China sales.* Segment margin for the period was 16.2 percent compared with 14.2 percent in 2016, primarily due to improved margin for the company's water treatment products sold in China, lower China selling and advertising costs as a percent of sales and improved performance in India.

(emphasis added).

59.     On February 16, 2018, defendants Rajendra, Kita, Brown, Current, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf caused A. O. Smith to file its annual report on Form 10-K with the SEC for the period ended December 31, 2017 (the "2017 10-K"), affirming the previously reported financial results.  The report was signed by defendants Rajendra, Kita, Brown, Current, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf. Defendants Rajendra and Kita signed certifications pursuant to SOX, attesting to the accuracy of the financial results, the disclosure of all fraud, and the effectiveness of the Company's internal control over financial reporting.  The report also touted A. O. Smith's experience and market dominance in China, claiming the Company had grown to become "one of the leading suppliers of water heaters to the residential market in China."  It continued in pertinent part:

**REST OF WORLD**

Sales in our Rest of World segment increased 15.6 percent, or $150.7 million, in 2017 compared with the prior year. *A 15.9 percent increase in sales in China to over $1 billion was the primary source of the increase. Excluding the appreciation of the U.S. dollar, sales in China increased 17.9 percent in 2017.*

*We have operated in China/or more than 20 years. In that time, we have been aggressively expanding our presence while building A. 0. Smith brand recognition in the residential and commercial markets.* The Chinese water heater market is predominantly comprised of electric wall-hung, gas tankless, combi-boiler and solar water heaters. *We believe we are one of the leading suppliers of water heaters to the residential market in China in dollar terms, with a broad product offering including electric, gas tankless, heat pump and combi boilers as well as solar units.* We also manufacture and market water treatment products and air purification products, primarily in China.

We sell water heaters in more than 8,000 retail outlets in China, of which over 2,900 exclusively sell our products. Our water treatment products and air purification products are sold in over 7,400 and 3,500 retail outlets in China, respectively.  Our e-commerce sales continued to grow in China, to approximately $250 million in 2017.

(emphasis added).

60.     The 2017 10-K also stated that the primary driver of A. O. Smith's favorable 2017

financial and operating results was the Company's success in China, stating in relevant part:

**Results of Operations**

Our sales in 2017 were a company record $2,997 million surpassing 2016 sales of $2,686 million by 11.6 percent. *The increase in sales in 2017 was primarily due to higher sales in China* as well as higher sales of water heaters and boilers in North America. Sales in China grew 15.9 percent to over $1 billion in 2017, and excluding the impact of the appreciation of the U.S. dollar, sales in China increased 17.9 percent in 2017.

(emphasis added).

61.     The 2017 10-K provided information about A. O. Smith's largest customers in

North America, but failed to state comparable information for its Rest of World segment.  The

report stated:

Net sales to our five largest customers represented approximately 38 percent of our sales in 2017. We expect that our customer concentration will continue for the

foreseeable future. Our concentration of sales to a relatively small number of customers makes our relationship with each of these customers important to our business. . . .

* * *

In 2017, sales to the North America segment's two largest customers were $361.4 million and $335.2 million which represented 12 percent and 11 percent of the Company's net sales, respectively. In 2016, sales to the North America segment's two largest customers were $311.5 million and $280.8 million which represented 12 percent and 11 percent of the Company's net sales, respectively. In 2015, sales to the North America segment's two largest customers were $301.7 million and $287.0 million which represented 12 percent and 11 percent of the Company's net sales, respectively.

62.     The above statements in ¶¶ 52-61 were materially misleading because they failed to disclose: (a) that A. O. Smith relied on a single distributor, UTP, for up to 75% of its sales in China; (b) that the Company engaged in a channel stuffing scheme whereby A. O. Smith caused distributors (through UTP) to accept more product than they could reasonable sell; (c) that, in furtherance of this scheme, A. O. Smith provided asset-backed financing to the distributors and agreed to repurchase inventory if requested to do so; and (d) that, as a result, the Company's financial statements misrepresented key metrics including sales and revenue.

63.     On February 28, 2018, defendants Rajendra, Brown, Current, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf issued a definitive proxy statement soliciting stockholder votes in advance of the Company's annual meeting to be held on April 9, 2018.  In the proxy statement, these eleven Individual Defendants solicited stockholder votes in favor of three management proposals, including a proposal to elect Rajendra, Brown, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf to new terms as directors.

64.     The proxy statement disclosed that the Board had determined that Rajendra and Wheeler were not independent directors.  Regarding corporate governance, the proxy statement was substantially similar to the 2017 proxy statement, as identified in ¶¶ 47-48.

65.     The 2018 proxy statement was materially misleading because it failed to disclose: (a) that A. O. Smith relied on a single distributor, UTP, for up to 75% of its sales in China; (b) that the Company engaged in a channel stuffing scheme whereby A. O. Smith caused distributors (through UTP) to accept more product than they could reasonable sell; (c) that, in furtherance of this scheme, A. O. Smith provided asset-backed financing to the distributors and agreed to repurchase inventory if requested to do so; and (d) that, as a result, the Company's financial statements misrepresented key metrics including sales and revenue.

66.     On April 11, 2018, the Company filed with the SEC a Form 8-K disclosing the results from the votes on the proposals contained in the 2018 proxy statement.  In particular, Rajendra, Brown, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf were reelected to terms as directors.

67.     On April 25, 2018, defendants Rajendra, Kita, Brown, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf caused A. O. Smith to publish a press release announcing its first quarter 2018 financial results.  Therein, the Company reported "net earnings of $98.8 million or $0.57 per share on record sales of $788.0 million for the first quarter of 2018." The press release also stated:

**Rest of World segment**

First quarter sales for the Rest of World segment increased 13 percent over the 2017 first quarter to $293.8 million. *In China, sales increased 13 percent* including approximately $21 million of benefit from currency translation due to the appreciation of the China currency compared with the prior year. *In local currency terms, sales grew four percent* and were negatively impacted by a pre-buy in the fourth quarter of 2017. Pricing actions in mid-2017, primarily due to higher steel and installation costs, as well as higher demand for gas tankless water heaters and water treatment products, contributed to higher sales and were partially offset by a significant decline in air purification product sales primarily due to improved air quality in China.

*First quarter segment earnings of $36.1 million were approximately 11 percent higher than the $32.5 million earned in last year's first quarter.* Higher China

sales, including the price increase, were partially offset by higher steel costs, selling and engineering expenses associated with new product development and the negative impact to earnings from lower air purification product sales.

(emphasis added).

68.     On May 7, 2018, defendants Rajendra, Kita, Brown, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf caused A. O. Smith to file its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2018, affirming the previously reported financial results.  The report was signed by Kempken and defendant Kita. Defendants Rajendra and Kita signed certifications pursuant to SOX, attesting to the accuracy of financial results, the disclosure of all fraud, and the effectiveness of the Company's internal control over financial reporting.   The report stated that "[s]ales in the first quarter of 2018 were $788 million, approximately 6.5 percent higher than sales of $740 million in the first quarter of 2017" primarily due to continued demand for our consumer products in China and positive end markets for our boilers in North America."  The report also stated that Company's China sales were expected to continue to grow, stating in relevant part:

> In our Rest of World segment, ***we expect sales in China to grow in 2018 at a rate of approximately nine to ten percent in local currency, or over 14 percent in U.S. dollar terms,*** as we believe tankless water heater market growth, geographic expansion and growth in sales of our water treatment products will contribute to our growth.

(emphasis added).

69.     On July 25, 2018, defendants Rajendra, Kita, Brown, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf caused A. O. Smith to publish a press release announcing second quarter 2018 financial results.  Therein, the Company reported "a 24 percent increase in net earnings on record second quarter sales."  Specifically, A. O. Smith reported net earnings of $114.5 million and sales of $833.3 million and stated that sales in China continued to grow.  The press release stated, in relevant part:

**Rest of World segment**

***Second quarter sales for the Rest of World segment increased 13 percent to $308.1 million compared with, sales of $272.8 million in the 2017 second quarter. Sales in China increased 12 percent in the second quarter, including a currency translation benefit of approximately $19 million. China sales grew four percent in local currency.*** Higher sales of gas tankless water heaters and water treatment products, as well as pricing actions effective in mid-2017, were partia1ly offset by lower sales of air purification products and e-commerce sales compared with the prior year.

(emphasis added).

70.    On August 6, 2018, defendants Rajendra, Kita, Brown, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf caused A. O. Smith to file its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2018, affirming the previously reported financial results.  The report was signed by Kempken and defendant Kita.  Moreover, defendants Rajendra and Kita signed certifications pursuant to SOX, attesting to the accuracy of the financial results, the disclosure of all fraud, the effectiveness of the Company's internal control over financial reporting.

71.    On October 30, 2018, defendants Rajendra, Kita, Brown, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf caused A. O. Smith to publish a press release announcing its third quarter 2018 financial results.  Therein, the Company reported "third quarter net earnings of $ 104.6 million or $0.61 per share on third quarter sales of $754.1 million."  Despite weaker housing growth in China, defendant Wheeler stated in the press release: "A bright spot in China was our sales of water treatment products, which grew significantly in the quarter . . . This growth reaffirms our belief of the growing consumer desire for safe drinking water in that country, as well as our capabilities to bring the best products to the market."  Regarding A. O. Smith's sales in China, the press release stated, in relevant part:

**Rest of World segment**

Sales of this segment, which is primarily comprised of China, Europe and India, ***increased approximately one percent in the third quarter of 2018 to $274.1 million compared with, the year-ago quarter. Higher sales of water treatment and air purification products in China were partially offset by a decline in electric water heater sales compared  with the prior year***. Currency translation reduced sales by approximately $6 million compared with the third quarter 2017.

***Segment earnings were approximately 16 percent higher at $39.1 million*** compared with the third quarter of 2017, primarily due to lower expenses associated with employee incentive programs in China and smaller losses in India. As a result, third quarter 2018 segment margin of 14.3 percent was significantly higher than the 12.5 percent segment margin achieved in the same period in 2017.

(emphasis added).

72.    On November 8, 2018, defendants Rajendra, Kita, Brown, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf caused A. O. Smith to file its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2018, affirming the previously reported financial results.  The report was signed by Kempken and defendant Kita.  Moreover, defendants Wheeler and Kita signed certifications pursuant to SOX, attesting to the accuracy of the financial results, the disclosure of all fraud, and the effectiveness of the Company's internal control over financial reporting.  The report also stated that the Company expected sales in China to grow, despite the weak housing growth in the region, stating in relevant part:

In our Rest of World segment, ***we expect sales in China to grow in 2018 at a rate of three percent in local currency terms, and five percent in U.S. dollar terms,*** lower than our previous guidance due to slower than expected housing growth caused by deteriorating  consumer confidence related to a weakening economy...

Combining all of these factors, ***we expect our consolidated sales to grow approximately seven percent in 2018.***

***We preliminarily project our 2019 sales growth in China in local currency will be three percent compared to 2018, as inventory levels remain elevated into 2019 due to slower housing growth.*** Further, we expect headwinds of approximately $50 million to sales and over $7 million to earnings in China due to the depreciation of the China currency compared to the U.S. dollar in 2019 compared to 2018. Combining our China projection, with the benefit of a full year of pricing actions for North America water heaters, a full year of sales of water treatment products to Lowe's and our projection that the remainder of our products will have sales growth

similar to 2018, ***we project our organic growth in 2019 will be 5.5 to seven percent in local currency terms and four to 5.5 percent in U.S. dollar terms.***

(emphasis added).

73.     On January 29, 2019, defendants Rajendra, Kita, Brown, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf caused A. O. Smith to publish a press release announcing fiscal 2018 financial results.  Therein, the Company reported "record sales of $3.2 billion and record net earnings of $444.2 million in 2018, or $2.58 per share."  The press release stated that the growth was driven, in part, by "water treatment products in China" as "[t]otal China sales grew approximately four percent."  The press release also stated, regarding sales in China:

**Rest of World segment**

***Sales of this segment increased five percent in 2018 to $1.2 billion compared with 2017 sales. China sales increased nearly two percent on a local  currency  basis.*** The Chinese currency favorably impacted  the translation of China sales by approximately $23 million. In China, higher water treatment product sales were partially offset by lower sales of electric water heaters and air purification products. Water heater and water treatment product sales in India increased approximately $8 million, or over 30 percent, in 2018 compared with 2017.

(emphasis added).

74.     On February 15, 2019, defendants Rajendra, Kita, Brown, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf caused A. O. Smith to file its annual report on Form 10-K with the SEC for the period ended December 31, 2018 (the "2018 10-K"), affirming the previously reported financial results.  The report was signed by defendants Rajendra, Kita, Brown, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf.  Moreover, Defendants Wheeler and Kita signed certifications pursuant to SOX, attesting to the accuracy of the financial results, the disclosure of all fraud, and the effectiveness of the Company's internal control over financial reporting.  The 2018 10-K highlighted A. O. Smith's experience and market

dominance in China, claiming the Company had grown to become "one of the leading suppliers of water heaters to the residential market in China."  It continued in pertinent part:

**REST OF WORLD**

*We have operated in China a for more than 20 years. In that time, we have been aggressively expanding our presence while building A. 0. Smith brand recognition in the residential and commercial markets.* The Chinese water heater market is predominantly comprised of electric wall-hung, gas tankless, combi boiler, heat pump and solar water heaters. *We believe we are one of the leading suppliers of water heaters to the residential market in China in dollar terms.* We manufacture  and market water treatment products, primarily residential reverse osmosis products. We also manufacture and market air purification products in China.

We sell water heaters in more than 9,000 retail outlets in China, of which over 2,800 exclusively sell our products. Our water treatment products and air purification products are sold in over 7,500 and 3,500 retail outlets in China, respectively.

(emphasis added).

75.    The 2018 10-K also stated that the main driver of A. O. Smith's favorable 2018 financial and operating results was the Company's success in China:

**RESULTS OF OPERATIONS**

Our sales in 2018 were a Company record $3,188 million surpassing 2017 sales of $2,997 million by 6.4 percent. *The increase in sales in 2018 was primarily due to* pricing actions related to higher steel costs and higher sales of boilers and residential water heaters in the U.S. as well as *higher sales of water treatment products in China. Our global water treatment sales grew to approximately $400 million in 2018. Sales in China grew four percent in 2018.* Excluding the impact of the appreciation of the U.S. dollar against the Chinese currency, our sales in China increased almost two percent in 2018. Our sales in 2017 were higher than 2016 sales of $2,686 million by 11.6 percent, primarily due to higher sales in China as well as higher sales of water heaters and boilers in North America. Our sales in China grew 15.9 percent in 2017 to over $1 billion and excluding the impact of the appreciation of the U.S. dollar against the Chinese currency, sales in China grew 17.9 percent in 2017 compared to 2016.

(emphasis added).

76.    The 2018 10-K provided information about A. O. Smith's largest customers in North America, but failed to state comparable information for its Rest of World segment.  The report stated:

> Net sales to our five largest customers represented approximately 39 percent of our sales in 2018. We expect that our customer concentration will continue for the foreseeable future. Our concentration of sales to a relatively small number of customers makes our relationship with each of these customers important to our business.

* * *

> In 2018, sales to the North America segment's two largest customers were $425.3 million and $355.6 million which represented 13 percent and 11 percent of the Company's net sales, respectively. In 2017, sales to the North America segment's two largest customers were $361.4 million and $335.2 million which represented 12 percent and 11 percent of the Company's net sales, respectively. In 2016, sales to the North America segment's two largest customers were $311.5 million and $280.8 million which represented 12 percent and 11 percent of the Company's net sales, respectively.

77.    The above statements in ¶¶ 67-76 were materially misleading because they failed to disclose: (a) that A. O. Smith relied on a single distributor, UTP, for up to 75% of its sales in China; (b) that the Company engaged in a channel stuffing scheme whereby A. O. Smith caused distributors (through UTP) to accept more product than they could reasonable sell; (c) that, in furtherance of this scheme, A. O. Smith provided asset-backed financing to the distributors and agreed to repurchase inventory if requested to do so; and (d) that, as a result, the Company's financial statements misrepresented key metrics including sales and revenue.

78.    On February 29, 2019, defendants Rajendra, Brown, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf issued a definitive proxy statement soliciting stockholder votes in advance of the Company's annual meeting to be held on April 9, 2019.  In the 2019 proxy statement, these ten Individual Defendants solicited stockholder votes in favor of three

management proposals, including a proposal to elect Rajendra, Brown, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf to new terms as directors.

79. The proxy statement disclosed that the Board determined that Rajendra and Wheeler were not independent directors. Regarding corporate governance, the proxy statement was substantially similar to the 2017 proxy statement, as identified in ¶¶ 47-48.

80. The proxy statement was materially misleading because it failed to disclose: a) that A. O. Smith relied on a single distributor, UTP, for up to 75% of its sales in China; (b) that the Company engaged in a channel stuffing scheme whereby A. O. Smith caused distributors (through UTP) to accept more product than they could reasonable sell; (c) that, in furtherance of this scheme, A. O. Smith provided asset-backed financing to the distributors and agreed to repurchase inventory if requested to do so; and (d) that, as a result, the Company's financial statements misrepresented key metrics including sales and revenue.

81. On April 10, 2019, the Company filed with the SEC a Form 8-K disclosing the results from the votes on the proposals contained in the proxy statement. In particular, Rajendra, Brown, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf were elected to terms as directors.

### C. The Truth Begins to Emerge

82. On April 30, 2019, A. O. Smith announced lower-than-expected financial results for first quarter 2019 in a press release, reporting that sales declined 5% to $748.2 million and net earnings declined 7% to $89.3 million. In the press release, defendant Wheeler explained that "sales in China declined . . . due to channel inventory build in the first quarter of 2018." Moreover, the press release stated that sales in the Rest of World segment fell 21% to $232.1 million, including an 18% decline in Chinese sales on a local currency basis, and that earnings for the segment fell more than 65% year-over-year to only $12.3 million.

83. On this news, the price of A. O. Smith's common stock fell $3.24, or nearly 6%, to $52.57 per share, on an abnormally high volume of over 4.8 million shares.

84. On May 16, 2019, J Capital published the J Capital report following extensive investigation with distributors and executives regarding A. O. Smith's China operations and undisclosed relationship with UTP. According to the report, the Company had overstated its financial results using dubious accounting practices with its undisclosed relationship with UTP. The report summarized its findings:

> **Pleading the fifth on China operations:** Despite never appearing in the financial filings or being mentioned on conference calls, Jiangsu UTP Supply Chain is involved in almost every aspect of A. O. Smith's China business. The relationship is public knowledge in China. UTP's involvement spans the acquisition of raw materials, the hiring of labor, potentially co-owning factories, marketing, and most notably "accepting" inventory and financing AOS distributors. We estimate that UTP may be responsible for as much as 75% of AOS China sales.

> **The UTP relationship has obscured China business performance and financial statements:** The UTP partnership has allowed AOS to inflate gross margins and mask the actual China revenue slowdown through distributer- financed channel stuffing. We also believe that the irreconcilable capex, R&D and asset inventory accounts are being used as cookie jars to preserve the "integrity" of the financial statements while hiding UTP's involvement. Our detailed distributor channel checks indicate China revenue will fall by as much as 21% in 2019 vs management's claims of a 6-8% decline.

> **Is the cash really there?** We believe that A. O. Smith does not actually have access to $539 mill that reportedly sits in China- about 84% of the company's total cash at year end 2018. We have conducted dozens of interviews in China and believe that AOS may have used its cash for distributor loans to prop up sales. That would mean the money is in escrow and cannot be touched until loans are repaid. What's more, distributor loans are at risk in a weakening market. Chinese distributors of AOS products - financially imperiled companies - are being financed at 18% to take AOS inventory, and many are holding six months of inventory. These companies are at risk of default - and AOS could be on the hook.

85. On this news, the Company's share price fell $4.88, or over 10%, over three consecutive trading sessions, to close at $43.26 per share on May 20, 2019, on unusually heavy trading volume.

86.     On May 17, 2019, the Individual Defendants caused A. O. Smith to publish a press release entitled "A. O. Smith Sets the Record Straight on J. Capital Research Report."  Though the response claimed that the J Capital Report "makes inaccurate, unfounded and misleading allegations," the Individual Defendants admitted that A. O. Smith had a material undisclosed customer in China through which most of its China business flowed.  Moreover, the response stated, without support, that "[a]ll revenue associated with UTP and others was appropriately recognized," but failed to affirm whether its expenses, such as those incurred in financing loans to customers to purchase A. O. Smith's products, were appropriately recognized and disclosed. The press release stated, in relevant part:

> As is common for many companies who do similar business in China, we utilize a distribution channel where third-party supply-chain partners, such as Jiangsu UTP Supply Chain (UTP) and other supply chain partners, purchase product from us which they subsequently distribute to distributers and ultimate end-users. We understand our supply chain partners do similar services for other global companies with whom they work.  All revenue associated with UTP and others was appropriately recognized in accordance with U.S. GAAP in our financial statements.  Our financial statements and internal controls over financial reporting are annually audited by Ernst & Young LLP. While we value all of our distribution relationships, we do not have debt or equity interests in UTP and maintain appropriate independent commercial agreements.
>
> Given we have significant longstanding operations in China, a significant portion of our $633 million of cash, cash equivalents and marketable securities as of March 31, 2019 was held by our foreign subsidiaries, including $457 million of cash denominated in local currency in China, in A. O. Smith-owned, unencumbered bank accounts. We executed a $150 million dividend from China in 2018, and we expect to dividend approximately $150 million in the first half of 2019.  We continue to review our capital allocation strategy, which includes repatriation of foreign cash as appropriate, while complying with local regulatory policies.

87.     On May 29, 2019, J Capital issued a second report, refuting A. O. Smith's response with additional information showing that the Company "has supported UTP with loans or guarantees."  Moreover, the report quoted distributors who were pressured by forced contract orders. The report stated, in relevant part:

Our surveys, including one conducted May 22-23, indicate that channel inventories are growing, not declining. Companies in the survey group now have an average of 4.5 months of inventory, up from 4 months in January and just 2 months at the end of 2017. Sales declines are most significant in East and South China. When AOS said it would accelerate new product launches in the Q1 2019 analyst call. Distributors see that as channel stuffing.

- Distributor #1 "The rate of new products coming out is too fast and it is relentlessly increasing our inventory. Before we have sold out the old model a new model is brought out and we have to buy more inventory." This distributor has eight months of inventory

- Distributor #2 "The rate of new models coming out is much faster than last year. It started to pick up in the H2 of last year. As a distributor we must purchase inventory of the new models, so we have a lot of inventory pressure now." This distributor has 6 months of inventory.

When asked if they are being offered more incentives to hold inventory, distributors said they get free product with orders over a certain level and rebates of between 3% and 8% if they can achieve the sales targets assigned by the company. Distributors told us:

- Distributor #1 "There are no new incentives just more new products. Our task is to get rid of old stock. Even if they gave us more incentives, we would not buy any more as we just have too much inventory."

- Distributor #7 "The assistance we get is loans from UTP. We use our stock as collateral. UTP pays the loan money directly to AOS for the stock that is delivered to us."

We expect sales to deteriorate in H2 2019, as distributors told us the market is down on last year and they plan to reduce inventory levels.

- Distributor #6 "There have been a few new products, but we have yet to order stock. Old stock of water heaters is the inventory problem we have. We aim to reduce our inventory this year."

- Distributor #2 "We hear that many distributors cannot keep up with the contracted orders enforced by AOS. They are breaking contracts, because the inventory pressure is so great."

88.     On this news, the Company's share price fell $1.86, or over 4%, to close at $41.19

per share on May 29, 2019, on unusually heavy trading volume.

89.     On June 3, 2019, the Individual Defendants were forced to admit that, just as J Capital had reported, the Company had backstopped UTP's loans to A. O. Smith's customers.  In a Form 8-K filed with the SEC, the Company stated, in relevant part:

> As previously reported, the Company maintains a long-standing commercial relationship, extending for over two decades, with supply-chain service provider Jiangsu Huiyuan Supply Chain Management Co., Ltd. ("UTP") in connection with the Company's business in China. In its capacity as supply-chain service provider to the Company, UTP provides order-entry, warehousing and logistics support in connection with approximately 70% of the Company's sales in China. The Company understands that UTP provides similar services for multiple other multinational companies.
>
> ***UTP also provides asset-backed financing to certain of the Company's distributors in China to facilitate their working capital needs.*** To facilitate its financing support business, UTP has collateralized lending facilities in place with multiple Chinese banks under which ***the Company has agreed to repurchase inventory if both requested by the bank and certain defined conditions are met, primarily related to the aging of the distributors' notes.***
>
> Since these contingent arrangements were first initiated in 2015, the Company has not been requested to repurchase any inventory under these arrangements, and the portion of this financing that is subject to the conditions that would allow the banks to request a repurchase of inventory has at no measurement date exceeded $2.5 million. Further, UTP is required to indemnify the Company for any losses the Company would incur in the event of an inventory repurchase under these arrangements. Potential losses under the repurchase arrangement represent the difference between repurchase price and net proceeds from the resale of product plus costs incurred in the process, less rebates.
>
> Before considering the reduction from the resale of the related inventory and rebate accruals ranging from $18 to $25 million, gross repurchase amounts, which would be contingent on the default of all of the outstanding loans, would have been approximately $67 million, $76 million, and $78 million, as of December 31, 2017, and 2018, and March 31, 2019, respectively. The reserve for estimated losses under repurchase agreements was immaterial at all measurement dates.

## VI.     THE INDIVIDUAL DEFENDANTS' MADE SUSPICIOUS STOCK SALES WHILE IN POSSESSION OF MATERIAL INFORMATION

### Rajendra

90.     Rajendra is Executive Chairman of A. O. Smith with a highly sophisticated understanding of the Company's financial results and their import.

91.     As set forth herein, between July 2016 and May 2019, Rajendra possessed material negative information which he knew was being concealed from investors.  Defendant Rajendra consciously acted to exploit his knowledge by selling over $5.48 million of A. O. Smith stock to his substantial benefit, as follows:

| Date | Shares Sold | Price | Proceeds |
|---|---|---|---|
| 5/5/2017 | 30,000 | $55.25 | $1,657,500 |
| 11/28/2017 | 15,000 | $61.81 | $927,122 |
| 11/29/2017 | 1,390 | $62.65 | $87,090 |
| 11/30/2017 | 3,610 | $62.74 | $226,491 |
| 2/14/2018 | 6,800 | $64.02 | $435,336 |
| 2/15/2018 | 8,200 | $64.84 | $531,688 |
| 2/21/2018 | 5,000 | $66.55 | $332,750 |
| 5/24/2018 | 10,000 | $64.06 | $640,600 |
| 5/25/2018 | 2,600 | $64.60 | $167,960 |
| 5/30/2018 | 7,400 | $64.62 | $478,188 |
| | **90,000** | | **$5,484,725** |

92.     Defendant Rajendra thus used his fiduciary position to enrich himself and failed to discharge his fiduciary duties by causing the Company to candidly reveal the truth of its business condition.

**Wheeler**

93.     Wheeler is CFO and was COO of A. O. Smith with a highly sophisticated understanding of the Company's financial results and their import.

94.     As set forth herein, between July 2016 and May 2019, Wheeler possessed material negative information which he knew was being concealed from investors.  Defendant Wheeler consciously acted to exploit his knowledge by selling over $1.56 million of A. O. Smith stock to his substantial benefit, as follows:

| Date | Shares Sold | Price | Proceeds |
|---|---|---|---|
| 5/4/2017 | 13,600 | $54.39 | $739,704 |
| 12/6/2017 | 13,293 | $61.49 | $817,387 |
| | **36,893** | | **$1,557,091** |

95.     Defendant Wheeler thus used his fiduciary position to enrich himself and failed to discharge his fiduciary duties by causing the Company to candidly reveal the truth of its business condition.

**Kita**

96.     Kita was CFO of A. O. Smith with a highly sophisticated understanding of the Company's financial results and their import.

97.     As set forth herein, between July 2016 and May 2019, Kita possessed material negative information which he knew was being concealed from investors.   Defendant Kita consciously acted to exploit his knowledge by selling over $6.16 million of A. O. Smith stock to his substantial benefit, as follows:

| Date | Shares Sold | Price | Proceeds |
|------|-------------|-------|----------|
| 12/5/2016 | 20,000 | $49.74 | $994,800 |
| 5/1/2017 | 31,619 | $53.86 | $1,702,999 |
| 6/2/2017 | 12,200 | $56.32 | $687,149 |
| 11/22/2017 | 8,958 | $60.78 | $544,465 |
| 2/16/2018 | 25,000 | $66.10 | $1,652,500 |
| 6/8/2018 | 9,000 | $64.61 | $581,459 |
| | **106,777** | | **$6,163,372** |

98.     Defendant Kita thus used his fiduciary position to enrich himself and failed to discharge his fiduciary duties by causing the Company to candidly reveal the truth of its business condition.

**Brown**

99.     Brown is a director of A. O. Smith with a highly sophisticated understanding of the Company's financial results and their import.

100.    As set forth herein, between July 2016 and May 2019, Brown possessed material negative information which he knew was being concealed from investors.   Defendant Brown

consciously acted to exploit his knowledge by selling over $850,000 of A. O. Smith stock to his substantial benefit, as follows:

| Date | Shares Sold | Price | Proceeds |
|------|-------------|-------|----------|
| 5/24/2017 | 8,000 | $54.25 | $434,000 |
| 5/2/2019 | 8,000 | $52.45 | $419,600 |
| | **16,000** | | **$853,600** |

101.    Defendant Brown thus used his fiduciary position to enrich himself and failed to discharge his fiduciary duties by causing the Company to candidly reveal the truth of its business condition.

**Greubel**

102.    Greubel is a director of A. O. Smith with a highly sophisticated understanding of the Company's financial results and their import.

103.    As set forth herein, between July 2016 and May 2019, Greubel possessed material negative information which he knew was being concealed from investors.  Defendant Greubel consciously acted to exploit his knowledge by selling over $2 million of A. O. Smith stock to his substantial benefit, as follows:

| Date | Shares Sold | Price | Proceeds |
|------|-------------|-------|----------|
| 2/9/2017 | 17,621 | $49.00 | $863,429 |
| 2/1/2018 | 17,856 | $66.50 | $1,187,424 |
| | **35,477** | | **$2,050,853** |

104.    Defendant Greubel thus used his fiduciary position to enrich himself and failed to discharge his fiduciary duties by causing the Company to candidly reveal the truth of its business condition.

**Jones**

105.    Jones is a director of A. O. Smith with a highly sophisticated understanding of the Company's financial results and their import.

106.    As set forth herein, between July 2016 and May 2019, Jones possessed material negative information which he knew was being concealed from investors.   Defendant Jones consciously acted to exploit his knowledge by selling over $14 million of A. O. Smith stock to his substantial benefit, as follows:

| Date | Shares Sold | Price | Proceeds |
|------|-------------|-------|----------|
| 2/6/2017 | 44,490 | $49.47 | $2,200,920 |
| 2/10/2017 | 120,900 | $49.81 | $6,022,029 |
| 2/15/2017 | 24,645 | $49.23 | $1,213,273 |
| 8/3/2017 | 60,000 | $54.02 | $3,241,200 |
| 8/21/2018 | 4,491 | $58.92 | $270,502 |
| 11/13/2018 | 9,000 | $45.99 | $413,910 |
| 2/8/2019 | 20,000 | $49.00 | $980,000 |
| 5/9/2019 | 1,000 | $49.50 | $49,500 |
| | **284,526** | | **$14,391,334** |

107.    Defendant Jones thus used his fiduciary position to enrich himself and failed to discharge his fiduciary duties by causing the Company to candidly reveal the truth of its business condition.

## VII.    DAMAGES TO THE COMPANY

108.    As a direct and proximate result of the Individual Defendants' conduct, A. O. Smith has been seriously harmed and will continue to be. Such harm includes, but is not limited to:

    a)  Legal fees incurred in connection with the Securities Class Action;

    b)  Any funds paid to settle the Securities Class Action; and

    c)  Costs incurred from compensation and benefits paid to the defendants who have breached their duties to A. O. Smith.

109.    In addition, A. O. Smith's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired.  The Company still has not fully admitted the nature of its false statements and the true condition of its business.  The credibility and motives of management are now in serious doubt.

110.    The actions complained of herein have irreparably damaged A. O. Smith's corporate image and goodwill.  For at least the foreseeable future, A. O. Smith will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that A. O. Smith's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VIII.   DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

111.    Plaintiff brings this action derivatively in the right and for the benefit of A. O. Smith to redress injuries suffered, and to be suffered, by A. O. Smith as a direct result of breaches of fiduciary duty by the Individual Defendants, violations of Section 10(b), 14(a) and 20(a) of the Exchange Act, insider trading (i.e., *Brophy* claim), and unjust enrichment. A. O. Smith is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

112.    Plaintiff will adequately and fairly represent the interests of A. O. Smith in enforcing and prosecuting its rights.

113.    Plaintiff has continuously been a shareholder of A. O. Smith at times relevant to the wrongdoing complained of and is a current A. O. Smith shareholder.

114.    When this action was filed, A. O. Smith's Board of Directors consisted of defendants Rajendra, Brown, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf.

**Rajendra and Wheeler**

115.    Rajendra served as CEO until September 2018, and Wheeler is the Company's current CEO.  As such, their own statements misleadingly concealed the Company's relationship with UTP.  Due to their statements, Rajendra and Wheeler are defendants in the Securities Class Action.  Moreover, the 2019 proxy statement admits that Rajendra and Wheeler are not

independent directors.  As a result, Rajendra and Wheeler would be interested in a demand regarding their own wrongdoing, and demand is futile as to them.

**Kadri, Mark Smith, Wolf and Wulf**

116.    Kadri, Mark Smith, Wolf and Wulf served as members of the Company's Audit Committee.  As such, they are responsible for the effectiveness of the Company's internal controls, the integrity of its financial statements, and the Company's compliance with applicable laws, regulations, and accounting standards.  Defendants Kadri, Mark Smith, Wolf and Wulf failed to ensure the integrity of the Company's internal controls, allowing the misleading statements to be disseminated in the Company's SEC filings and other disclosures.  Thus, defendants Kadri, Mark Smith, Wolf and Wulf breached their fiduciary duties and are not disinterested, and demand is excused as to them.

**Bruce Smith, Rajendra, Jones, Brown, Mark Smith, and Wheeler**

117.    According to the 2019 Proxy, the Smith Family Voting Trust has the power to elect a majority of the Company's Class A Directors, who make up a majority of the Board.

118.    As of December 31, 2018, the Smith Family Voting Trust directly or beneficially owned 96.5% of Class A Common Stock and therefore 96.5% of voting power with respect to the election of the Class A Directors.  Further, according to the 2019 Proxy "[s]ince the Board is currently composed of six Class A Directors and four Common Stock Directors, the Smith Family Voting Trust effectively exercises control over voting power for a majority of the members of our Board of Directors, and therefore, [the Company] ha[s] qualified as a 'controlled company' under the New York Stock Exchange ("NYSE") rules."

119.    The Class A Directors are Bruce Smith, Rajendra, Jones, Brown, Mark Smith, and Wheeler.  Mark Smith is also a member of the Audit Committee.  Mark Smith and Bruce Smith

are two of the three trustees of the Voting Trust.  Wulf served as a Class A Director between 2003, i.e. when he joined the Board, until 2011.

120.    The Proxy further states that "as a controlled company, under NYSE rules, we may choose to not have a majority of independent directors or compensation or governance committees consisting solely of independent directors."

121.    Nevertheless, the Proxy stated that "notwithstanding our status as a controlled company, the Board has not elected to utilize the 'controlled company' exemption in any respect because, as described below, we have a Board in which a majority of our members consist of independent directors, and all members of the Audit Committee, Personnel and Compensation Committee and Nominating and Governance Committee are independent for SEC and NYSE purposes."

122.    Notwithstanding the Company's statement that it will not avail itself of certain privileges otherwise available to it, demand is still futile on any Class A or non-Class A Director concerning the conduct of either Mark or Bruce Smith because they possess, through the Trust, the power to vote that director out.  Indeed, any demand with respect to Mark Smith due to his role on the Audit Committee would be futile for the same reason, namely, he is one of the trustees that controls the Company.  The same is true with respect to any demand on Bruce Smith.

**Greubel, Wolf, and Wulf**

123.    Greubel, Wolf, and Wulf have not been employed by or served as directors for any other company since their retirement in 2009, 2007 and 2011, respectively.  Therefore, the compensation paid by the Company to defendants Greubel, Wolf and Wulf is material for them.

## COUNT I

### Against All Defendants for Breach of Fiduciary Duty

124.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

125.    Each Individual Defendant owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of A. O. Smith's business and affairs, particularly with respect to issues as fundamental as public disclosures.

126.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of A. O. Smith.

127.    In breach of their fiduciary duties owed to A. O. Smith, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

128.    In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report revenue and the Company's overall prospects.

129.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, A. O. Smith has sustained and continues to sustain significant damages. Including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets. As a result of the misconduct alleged herein, defendants are liable to the Company.

## COUNT II

### Violations of Section 14 of the Securities Exchange Act of 1934
### (Against Defendants Rajendra, Brown, Current, Greubel, Jones, Kadri, Bruce Smith, Mark Smith, Wheeler, Wolf, and Wulf)

130.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

131.   Rule 14a-9, promulgated pursuant to §14(a) of the Securities Exchange Act of 1934, provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.   Specifically, the Company's proxy statements filed on March 3, 2017, February 28, 2018, and February 29, 2019 violated §14(a) and Rule 14a-9 because it failed to disclose: (a) that A. O. Smith relied on a single distributor, UTP, for up to 75% of its sales in China; (b) that the Company engaged in a channel stuffing scheme whereby A. O. Smith caused distributors (through UTP) to accept more product than they could reasonable sell; (c) that, in furtherance of this scheme, A. O. Smith provided asset-backed financing to the distributors and agreed to repurchase inventory if requested to do so; and (d) that, as a result, the Company's financial statements misrepresented key metrics including sales and revenue.

132.   In the exercise of reasonable care, defendants should have known that the statements contained in the proxy statements were materially false and misleading.

133.   The misrepresentations and omissions in the proxy statements were material to Company shareholders in voting on the proxy statements.   The 2017 proxy statement solicited and obtained shareholder votes for: (i) director nominees; (ii) executive compensation; (iii) frequency of future advisory votes on executive compensation; (iv) ratification of the appointment of the Company's independent auditor; and (v) performance goals for the Company's Combined

Incentive Compensation Plan.  The 2018 proxy statement solicited and obtained shareholder votes for: (i) director nominees; (ii) executive compensation; and (iii) ratification of the appointment of the Company's independent auditor.  The 2019 proxy statement solicited and obtained shareholder votes for: (i) director nominees; (ii) executive compensation; and (iii) ratification of the appointment of the Company's independent auditor.  The proxy statements were essential links in the accomplishment of the continuation of defendants' continued violation of their fiduciary duties.

134.    The Company was damaged as a result of the defendants' material misrepresentations and omissions in the proxy statements.

## COUNT III

### Against Rajendra, Wheeler, Kita, Brown, Greubel, and Jones - *Brophy* Claim

135.    Plaintiff incorporates by reference and realleges each and every allegation above, as though fully set forth herein.

136.    As alleged above, Rajendra, Wheeler, Kita, Brown, Greubel, and Jones are fiduciaries of A. O. Smith, possessed material, non-public information of A. O. Smith, and used that information improperly to profit from sales of A. O. Smith stock. When Rajendra, Wheeler, Kita, Brown, Greubel, and Jones directed the stock sales set forth above, they were motivated to do so, in whole or in part, by the substance of the material, non-public information they possessed, and they acted with scienter.

137.    When Rajendra, Wheeler, Kita, Brown, Greubel, and Jones sold their A. O. Smith stock, they knew that the investing public was unaware of the negative material information that they possessed. They also knew that if the information were disclosed, the market price of A. O. Smith stock would be significantly lower. Rajendra, Wheeler, Kita, Brown, Greubel, and Jones timed their stock sales to take advantage of the investing public's ignorance of the concealed

material facts and obtain a higher price for the stock they sold. They thereby benefitted by misappropriating A. O. Smith's non-public information.

138.    Plaintiff has no adequate remedy at law.

### COUNT IV
### (Derivative Claim for Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 Promulgated Thereunder Against the Individual Defendants)

139.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

140.    This Count is asserted on behalf of the Company against Defendants for violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

141.    Defendants, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the U.S. mails, engaged and participated in a continuous course of conduct that operated as a fraud and deceit upon the Company; made or disseminated various false and/or misleading statements of material facts and omitted to state material facts necessary in order to make the statements made or disseminated, in light of the circumstances under which they were made or disseminated, not misleading; made or disseminated the above statements intentionally or with a deliberately reckless disregard for the truth; and employed devices and artifices to defraud in connection with the misleading disclosures, which were intended to, and did deceive the Company: (a) that A. O. Smith relied on a single distributor, UTP, for up to 75% of its sales in China; (b) that the Company engaged in a channel stuffing scheme whereby A. O. Smith caused distributors (through UTP) to accept more product than they could reasonable sell; (c) that, in furtherance of this scheme, A. O. Smith provided asset-backed financing to the distributors and agreed to repurchase inventory if requested to do so; and (d) that, as a result, the Company's financial statements misrepresented key metrics including sales and revenue..

142.    Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon the Company in connection with the misleading disclosures.

143.    As  alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced  in  the  issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding A. O. Smith, their control over, and/or receipt and/or modification of A. O. Smith's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning A. O. Smith, participated in the fraudulent scheme alleged herein.

144.    As a result of Defendants' misconduct, the Company is suffering litigation expense and reputational harm in the marketplace in violation of section 10(b) of the Exchange Act and SEC Rule 10b-5.

145.    Plaintiff brought this claim within two years of its discovery of the facts constituting the violation and within five years of the violation.

**COUNT V**
**(Derivative Claim for Violations of Section 20(a) of the Exchange Act Against Defendants**
**Rajendra, Wheeler, and Kita)**

146.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

147.    This Count is asserted on behalf of the Company against defendants Rajendra, Wheeler, and Kita for violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

148.    During their tenure as executive officers, defendants Rajendra, Wheeler, and Kita were controlling persons within the meaning of Section 20(a) of the Exchange Act. By reason of their absolute control, defendants Rajendra, Wheeler, and Kita had the power and authority to direct the management and activities of the other executive employees, to hire and fire other executive employees at whim, and to cause other executive employees to engage in the wrongful conduct complained of herein. Defendants Rajendra, Wheeler, and Kita were able to and did control, directly or indirectly, the content of the public statements made by all other executive employees at all relevant times, including the materially misleading financial statements, thereby causing the dissemination of the false and misleading statements and omissions of material facts as alleged herein.

149.    In their capacity as the senior executives, defendants Rajendra, Wheeler, and Kita had direct involvement in and oversight over the day-to-day operations of the executive employees and the Company's employees, who would not act unless defendants Rajendra, Wheeler, and Kita agreed with their course of conduct.

150.    As set forth above, defendants Rajendra, Wheeler, and Kita violated Section 10(b) of the Exchange Act by their acts and omissions as alleged herein. To the extent defendants Rajendra, Wheeler, and Kita are not the makers or disseminators of a specific false or misleading

statement made by the Company, defendants Rajendra, Wheeler, and Kita are liable pursuant to Section 20(a) of the Exchange Act.

151.    As a direct and proximate result of their conduct, the Company suffered damages in connection with its misleading disclosures.

## COUNT VI

### Against All Defendants for Unjust Enrichment

152.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

153.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of A. O. Smith.  The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to A. O. Smith.

154.    Plaintiff, as a stockholder and representative of A. O. Smith, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

155.    Plaintiff, on behalf of A. O. Smith, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of A. O. Smith, demands judgment as follows:

A.    Declaring that plaintiff may maintain this action on behalf of A. O. Smith and that plaintiff is an adequate representative of the Company;

B.    Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

C.     Declaring that Defendants have breached and/or aided and abetted the breach of their fiduciary duties to A. O. Smith;

D.     Directing A. O. Smith to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect A. O. Smith and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1.     a proposal to strengthen the Company's controls over financial reporting;

2.     a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

3.     a proposal to strengthen A. O. Smith's oversight of its disclosure procedures;

4.     a provision to control insider transactions; and

5.     a provision to permit the stockholders of A. O. Smith to nominate at least three candidates for election to the Board;

E.     Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of A. O. Smith has an effective remedy;

F.     Awarding to A. O. Smith restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

G.    Awarding to plaintiff the costs and disbursements of the action, including

reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

H.    Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury.

Dated: February 13, 2020                    Respectfully submitted,

Of Counsel:                                 FARNAN LLP

**GLANCY PRONGAY & MURRAY LLP**    /s/ Michael J. Farnan
Matthew M. Houston                          Brian E. Farnan (Bar No. 4089)
Benjamin I. Sachs-Michaels                  Michael J. Farnan (Bar No. 5165)
712 Fifth Avenue                            919 N. Market St., 12th Floor
New York, New York 10019                    Wilmington, DE 19801
Telephone: (212) 935-7400                   Telephone: (302) 777-0300
E-mail: bsachsmichaels@glancylaw.com        Facsimile: (302) 777-0301
                                            Email: bfarnan@farnanlaw.com
Robert V. Prongay                           Email: mfarnan@famanlaw.com
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
E-mail: rprongay@glancylaw.com

*Attorneys for Plaintiff Alan Jarozewski*